## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN DOE 8; JOHN DOE 9;          **CLASS ACTION**
JOHN DOE 10, on behalf of themselves
and a class of all others similarly situated,     **COMPLAINT AND JURY DEMAND**

        Plaintiffs,

                                    Case No.

vs.                                      Hon.

RICK SNYDER, Governor of the State of Michigan;
HEIDI WASHINGTON, Director, Michigan Department of Corrections;
DANIEL H. HEYNS, former Director, Michigan Department of Corrections;
THOMAS FINCO, Deputy Director of MDOC Correctional Facilities
Administration;
DENNIS STRAUB, former Deputy Director of MDOC Correctional Facilities
Administration;
RANDY TREACHER, Chief Deputy Director of MDOC Correctional Facilities
Administration;
MARY BERGHUIS, Warden of Earnest C. Brooks Correctional Facility;
DAVID BERGH, Warden of Thumb Correctional Facility;
JEFFREY WOODS, Warden of Chippewa Correctional Facility;
CARMEN PALMER, Warden of Michigan Reformatory Correctional Facility;
THOMAS WINN, Warden of Saginaw Correctional Facility;
DUNCAN MACLAREN, Warden of Kinross Correctional Facility;
MITCH PERRY, Warden of Newberry Correctional Facility; and
KENNETH MCKEE, Warden of Bellamy Creek Correctional Facility,
each sued together with his/her successor(s) in interest jointly
and severally,

        Defendants.
_____/

| | |
|---|---|
| DEBORAH LaBELLE (P3 595) | JENNIFER B. SALVATORE |
| ANLYN ADDIS (P76568) | (P66640) |
| Attorneys for Plaintiffs | SARAH PRESCOTT (P70510) |
| 221 N Main St., Ste. 300 | NAKISHA CHANEY (P65066) |
| Ann Arbor, MI 48104 | SALVATORE PRESCOTT & |
| (734) 996-5620 | PORTER, PLLC |
| deblabelle@aol.com | Attorneys for Plaintiffs |
| aaddis@sbcglobal.net | 105 E. Main Street |
| | Northville, Michigan 48104 |
| | (248) 679-8711 |
| | salvatore@spplawyers.com |
| | prescott@spplawyers.com |
| MICHAEL L. PITT (P24429) | chaney@spplawyers.com |
| PEGGY GOLDBERG PITT (P31407) | |
| CARY S. McGEHEE (P42318) | |
| Pitt McGehee Palmer Rivers & | |
| Golden, PC | |
| Attorneys for Plaintiffs | |
| 117 W 4th St., Ste. 200 | |
| Royal Oak, MI 48067 | |
| Phone: (248) 398-9800 | |
| mpitt@pittlawpc.com | |
| ppitt@pittlawpc.com | |
| cmcgehee@pittlawpc.com | |

This matter is a companion case to: 13-cv-14356-RHC-RSW *DOE 1 et al v. Michigan Department of Corrections* and 2:16-cv-13765-MFL-EAS, *DOE 1, et al v. Michigan Department of Corrections*, currently assigned to Judge Cleland.

## COMPLAINT AND JURY DEMAND

1. This proposed class action lawsuit seeks injunctive and declaratory relief and damages on behalf of children confined in adult prisons operated by the Michigan Department of Corrections (MDOC). The putative class contains at least

500 children ranging in age from 14-17 years ("youthful prisoners") who have been incarcerated in MDOC's adult prisons for sentences of a year or more.

2. During their imprisonment, these youth have been housed in cells with adult prisoners, and have been forced to shower, eat, recreate and work with adult prisoners without adequate supervision to ensure their safety and without regard to their status as children. Male youthful prisoners incarcerated in the adult prisons are also subject to body searches and viewing by female staff while showering and performing basic bodily functions.

3. The MDOC and Defendants are and were on notice that incarcerating youth in adult prisons without regard to their vulnerable child status subjects youthful prisoners to heightened and substantial risk of physical and sexual violence and abuse and sexual harassment at the hands of adult prisoners and prison staff.

4. Placing children in adult prisons without regard to their youthful status and vulnerability has resulted in increased punishment and degrading treatment through the use of tasers, solitary confinement and deprivation of rehabilitative programming and educational services.

5. Defendants' policy and practice of housing youthful and adult prisoners together without taking adequate steps to protect youth from a known harm constitutes deliberate indifference to their safety.

6.     Congress enacted the Prison Rape Elimination Act (PREA) more than a decade ago after recognizing the harm to youth placed in adult facilities. PREA requires state prisons to keep any prisoners under the age of 18, who are housed in adult facilities, separate by sight and sound from adult prisoners.

7.     As a result of Defendants' policies and practices, the proposed class, including Plaintiffs, have suffered and are at an imminent risk of suffering irreparable harm, including but not limited to physical injuries, sexual violence and abuse, severe emotional distress and mental trauma, degrading treatment, lengthened periods of incarceration, solitary confinement and deprivation of basic educational and rehabilitative services.

## JURISDICTION AND VENUE

8.     This is a civil action brought pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief together with monetary damages against Defendants for violations of the Eighth and Fourteenth Amendments of the United States Constitution.

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343(a)(3) and (4), which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, the Declaratory Judgment Act. This Court has personal jurisdiction over the Defendants named herein as public officials of the State of Michigan sued

4

in their official and individual capacities for violations of Plaintiffs' statutory and constitutional rights. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest and costs.

10. Venue is proper in this Court as Defendants conduct their business across the State, including in the Eastern District of Michigan, and some of the named Plaintiffs are or were incarcerated in the Eastern District of Michigan during the relevant time periods.

## PARTIES

### A. Plaintiffs

11. Plaintiff representatives are citizens of the United States and at all relevant times were children imprisoned in facilities under the jurisdiction of the MDOC. Plaintiffs bring this action on behalf of themselves and a class of youthful prisoners who are, were, or will be confined in adult prisons in Michigan and who have been or will be subjected to sexual and physical assaults and abuse, sexual harassment, and degrading treatment from adult prisoners and staff as a result of incarceration in adult prisons without adequate supervision, separation from adult prisoners, or treatment consistent with their status as children. Plaintiffs seek injunctive and declaratory relief and damages for themselves and for members of the class.

**B. Defendants**

12.     All individual defendants are sued in their individual and official capacities, and relative to their official capacities, they are sued with their successor(s) in interest pursuant to Fed. R. Civ. P. 25(d).

13.     MDOC is a Department of the State of Michigan and with the Defendant Governor, is responsible for the care and custody of youthful prisoners incarcerated in prisons in the State of Michigan. MDOC and Defendant Governor have the responsibility, authority and ability to remedy current and future conditions at facilities housing youthful prisoners that have given rise to the sexual and physical abuse and assaults, degrading treatment and deprivation of rights as set forth in this complaint.

14.     Defendant Rick Snyder is the Governor of the State of Michigan and is invested with executive power pursuant to Art. V, Section 1 of the Michigan Constitution. Defendant Snyder, with the management of the Michigan Department of Corrections, is responsible for the care and custody of youthful prisoners in the State of Michigan, and has the responsibility, authority and ability to remedy current and future conditions at facilities housing youthful prisoners that have given rise to and continue to pose a substantial risk of sexual and physical abuse and assaults, degrading treatment and deprivation of rights as set forth in this complaint.

15.    Defendant Heidi Washington ("Washington") is and was at relevant times the Director of the Michigan Department of Corrections. Her duties and responsibilities include developing and implementing policies and procedures for the operation and management of the Michigan Department of Corrections and its employees. She is responsible for the care, custody and protection of prisoners under the jurisdiction of the Michigan Department of Corrections.

16.    Defendant Daniel H. Heyns, ("Heyns") was at relevant times the Director of the Michigan Department of Corrections. His duties and responsibilities include developing and implementing policies and procedures for the operation and management of the Michigan Department of Corrections and its employees. He is responsible for the care, custody and protection of prisoners under the jurisdiction of the Michigan Department of Corrections.

17.    Defendant Thomas Finco ("Finco") was at relevant times the Deputy Director of the MDOC's Correctional Facilities Administration (CFA), and has served in that capacity since October 1, 2011. Defendant Finco's duties and responsibilities include the operation of all correctional institutions in the MDOC system, including promulgating and administering MDOC's policies related to the placement and custody of individual prisoners at MDOC facilities.

18.    Defendant Dennis Straub ("Straub") was at relevant times the Deputy Director of the CFA before October 1, 2011. His duties and responsibilities included

the promulgation and administration of MDOC policies, including custodial placement and the custody and protection of youthful prisoners at their respective facilities during his tenure.

19. Defendant Randy Treacher ("Treacher") was at relevant times the Chief Deputy Director of the CFA. His duties and responsibilities include the supervision of Defendants Straub and Finco during their respective tenures.

20. Defendants Governor Snyder, Washington, Heyns, Finco, Straub and Treacher are collectively referred to in this action as "Policymaker Defendants."

21. The individual Warden Defendants were, at all relevant times, wardens at MDOC facilities where the named Plaintiffs have been housed with adult prisoners and have been subject to the harm and injuries set forth herein. At all relevant times the Warden Defendants were responsible for the training, assignment and supervision of staff at their respective facilities, as follows:

a. MARY BERGHUIS, Warden of Earnest C. Brooks Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Doe 10.

b. DAVID BERGH, Warden of Thumb Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Doe 10.

c. JEFFREY WOODS, Warden of Chippewa Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Does 8, 9 and 10.

d. KENNETH MCKEE, Warden of Bellamy Creek Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Doe 10.

e. CARMEN PALMER, Warden of Michigan Reformatory Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Doe 10.

f. THOMAS WINN, Warden of Saginaw Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Doe 10.

g. DUNCAN MACLAREN, Warden of Kinross Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Does 8 and 9.

h. MITCH PERRY, Warden of Newberry Correctional Facility, was and is responsible for the unlawful treatment and conditions involving John Doe 9.

22.     The above-named wardens will be collectively referred to herein as the "Warden Defendants."

23.    In their capacity as wardens, Warden Defendants' duties and responsibilities include the training, assignment, supervision, discipline and investigation of correctional officers and MDOC employees.

24.    The Warden Defendants are also responsible for the custody, safety, protection, fair treatment and rehabilitation of the youthful prisoners in their facilities and for ensuring that the facilities housing youthful prisoners are operated according to proper correctional standards, statutes and/or laws to ensure the safety and protection of vulnerable populations, including Plaintiffs.

25.    The Warden Defendants are also responsible for developing procedures and implementing policies to prevent the sexual abuse and degrading treatment of youthful prisoners and are also responsible for ensuring an adequate and effective mechanism for the safe and effective reporting of sexual and physical assaults and sexual harassment experienced by prisoners housed at their facilities.

26.    The Warden Defendants are responsible for ensuring that youthful prisoners under their care and supervision are not deprived of rehabilitative or educational opportunities or subjected to retaliation and/or increased punishment due to their vulnerable status as youth.

## CLASS ACTION ALLEGATIONS

27.    This action is brought by the named Plaintiffs on behalf of youthful prisoners who, since October of 2010, have been, are now, or will be hereafter

incarcerated in adult correctional facilities under the jurisdiction of the Michigan Department of Corrections and who have been subjected to physical and sexual abuse, assaults, harassment and/or other degrading treatment by adult prisoners and/or MDOC custodial staff.

28.     The number of youth who have been subject to these violations of their rights while under the jurisdiction of the MDOC since 2010 exceeds one hundred children.  The number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to challenge the policies, procedures and practices of Defendants that are a proximate cause of their ongoing abuse.

29.     There are questions of law and fact raised by the named Plaintiffs' claims common to, and typical of, those raised by the Class they seek to represent.

30.     Questions of law or fact common to the Class, without limitation, include:

a. Defendants' failure to properly house youthful prisoners, failure to separate youthful prisoners from adult prisoners in MDOC facilities, and failure to provide adequate supervision to safeguard this vulnerable population resulting in sexual abuse and physical violence by adult prisoners;

b. Defendants' failure to properly supervise, train, monitor, discipline, and/or regulate prison staff and failure to properly house and protect this vulnerable

population resulting in sexual abuse and physical violence by adult prisoners and prison staff;

c.  Defendants' ongoing failure to promulgate and implement proper policies and procedures to identify and house vulnerable youthful prisoners to safeguard their protection from harm from sexual abuse, solitary confinement and deprivation of rehabilitative opportunities;

d.  Defendants' failure to adequately protect youth from a known risk of sexual abuse from adult prisoners and properly supervise, train, and discipline prison staff in violation of Plaintiffs' constitutional, common law, and statutory rights.

e.  The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all Class members.

31.    Plaintiff Class representatives will fairly and adequately protect the interests of the Plaintiff class members.  Plaintiffs' counsel know of no conflicts of interest between the class representatives and absent class members with respect to the matters at issue in this litigation; the class representatives will vigorously prosecute the suit on behalf of the Class; and the class representatives are represented by experienced counsel.  Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation involving issues of children, sexual assault, and/or prison conditions.   Plaintiffs' attorneys have

identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent the Class.

32.    The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice.  Moreover, the prosecution of separate actions by individual members of the Class could result in inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

33.    Defendants have acted or failed to act on grounds generally applicable to all Plaintiffs, necessitating declaratory and injunctive relief for the Class.

## STATEMENT OF GENERAL FACTS

34.    The State of Michigan places children as young as fourteen years of age in adult prisons under the supervision of the MDOC.

35.    The MDOC has failed to separate youth under the age of 18 from adult prisoners, despite their obvious and substantial vulnerability to harm from adult prisoners.  The MDOC has maintained a policy and procedure of placing 17-year-old youths directly in cells and housing units with adult prisoners, despite their obvious and substantial vulnerability to harm from adult prisoners.

36.    The MDOC has failed to adequately separate or supervise youth aged 14-17 incarcerated with adult prisoners despite the promulgation of standards under

the Prison Rape Elimination Act (PREA) requiring site and sound separation of youth under the age of 18 from adults.  42 U.S.C. §15601 et seq; 28 CFR §115.14.

37.     PREA is a federal statute designed to address findings that youth are eight times more likely to be subjected to sexual violence and that youthful prisoners are five times more likely to be sexually assaulted in adult rather than juvenile facilities.  PREA requires that any youth under the age of 18 shall not be placed in a housing unit in which the youthful inmate will have sight, sound or physical contact with any adult prisoners or use of a shared day room or other common space, shower area, or sleeping quarters.

38.     Independent of the requirements of PREA, Defendants have failed to adequately consider youth and their obvious vulnerability in determining the proper placement, transfer, supervision and treatment of youth under their supervision.

39.     In contravention of PREA, MDOC's own policies, and/or standard correctional practices, Defendants have placed vulnerable youth, including Plaintiffs, in adult prisons without separation by sight and sound from adult prisoners, without adequate supervision during contact with adults, and without procedures to protect youth, including Plaintiffs, from sexual victimization so as to ensure their safety and well-being.

40.     Defendants' practice of using solitary confinement for the placement of youth, including Plaintiffs, without ensuring humane treatment, has failed to

14

adequately protect Plaintiffs and constitutes a punishment for their vulnerability and/or reporting of abuse.

41.     Defendants, without adequate procedures, training or supervision, have subjected youth to cross-gender searches, pat-downs and viewings while showering and performing basic bodily functions without taking adequate steps to protect their safety, privacy and rights.

42.     Defendants have created and continued policies that fail to separate youthful and adult prisoners in showers, yard, programming, or eating areas, and fail to provide them with adequate supervision to prevent sexual victimization and assault.

43.     Defendants, despite their knowledge and the obvious and apparent risks of placing youth in adult prisons, have failed to implement and effectuate policies, procedures and mechanisms to deter sexual and physical abuse against Plaintiffs and other youth under their supervision.

44.     As a result of Defendants' acts and omissions in failing to safeguard vulnerable youth, including Plaintiffs, the plaintiffs in this case have all experienced some combination of sexual and physical abuse, harassment, and/or related violence from adult prisoners and/or staff in MDOC facilities.

45.     Defendants have aided and abetted the sexual abuse and misconduct by adult prisoners and staff by failing to take adequate steps to prevent and deter the

violations of Plaintiffs' rights, by, among other acts and omissions, failing to adequately train, supervise, investigate and discipline staff who violated Plaintiffs' rights. Defendants' acts and omissions regarding screening, training, supervision, investigation and discipline surrounding the placement of youth in adult prisons and the sexual and physical abuse of these youths permitted and ratified the abusive behavior by adult male prisoners and by MDOC staff.

46.    Defendants also knew or should have known that their placement of children in adult prisons without adequate separation from adult prisoners or supervision together with a failure to properly train, regulate, supervise, monitor, discipline and adequately investigate complaints about MDOC staff would lead to sexual assaults, sexual harassment and violence against youthful prisoners, including Plaintiffs, housed in MDOC adult prisons.

## STATEMENT OF FACTS RELATIVE TO EACH NAMED PLAINTIFF AND CLASS REPRESENTATIVE

### A. JOHN DOE 8

47.    John Doe 8 is currently a prisoner at an adult prison under the jurisdiction of the MDOC.

48.    John Doe 8 was incarcerated in an adult MDOC prison at the age of 17. He has been housed at Chippewa Correctional Facility (URF), Kinross Correctional Facility (KCF), Thumb Correctional Facility (TCF), Ojibway Correctional Facility

(OCF), Alger Correctional Facility (LMF), and Oaks Correctional Facility (ECF), where he was subject to the conditions set forth above.

49.     In 2012, while 17 years old, John Doe 8 was housed for a short time at URF. URF Warden Defendants and Policymaker Defendants failed to separate John Doe 8 from adult prisoners despite his obvious vulnerability or take adequate precautions to protect him from assault and abuse.

50.     While at URF, John Doe 8 was raped in the shower by an adult male prisoner. As a result of the anal rape, John Doe 8 contracted genital warts.

51.     A short time after he was raped, John Doe 8 was transferred to KCF without any safeguards for his protection and despite his prior abuse and obvious vulnerability.

52.     KCF Warden Defendants and Policymaker Defendants failed to separate John Doe 8 from adult prisoners or take adequate precautions to protect him from further abuse.

53.      John Doe 8 was housed in a four-man room at KCF. All three of his cell mates were adult male prisoners. One of the adult cellmates pressured John Doe 8 for sex.

54.     On one occasion, the older male cellmate brought John Doe 8 to a bathroom and told him that if he performed specific sexual acts he would receive protection on the yard.

55.     John Doe 8 sought help from MDOC staff but no adequate steps were taken to ensure his safety. Shortly after his reporting, John Doe 8 was physically assaulted by the cellmate.

56.     Since being sexually assaulted at URF, John Doe 8 has spent more than 10 weeks in isolation for protective purposes. He has been on suicide watch and has attempted suicide on multiple occasions.

57.     Defendants' failure to provide safe and secure housing to John Doe 8 and failure to provide adequate medical and mental health care has resulted in his loss of rehabilitative and educational programming and severe emotional distress.

## B. JOHN DOE 9

58.      John Doe 9 is currently a prisoner at an adult prison under the jurisdiction of the MDOC.

59.     John Doe 9 was incarcerated in an adult MDOC prison in September 2011, when he was 17 years old. Since that time, he has been housed at URF, Newberry Correctional Facility (NCF), KCF, and LMF, where he was subject to the conditions set forth above.

60.     URF Warden Defendants and Policymaker Defendants failed to separate John Doe 9 from adult prisoners or take adequate precautions to protect John Doe 9 from assault and abuse.

61.     While a 17-year-old at URF, John Doe 9 was targeted with sexual harassment and abuse and threats of violence by an adult prisoner. The adult prisoner would make John Doe 9 clean his shoes and clothes, would take his things, and would regularly grope and pull on his genitals and grab his buttocks. The adult prisoner would also follow him to the shower where he would subject John Doe 9 to sexual threats and harassment.  The abuse was open and obvious.  MDOC staff witnessed the sexual abuse and harassment but failed to take any steps to protect John Doe 9.

62.     John Doe 9 sought help from MDOC staff and complied with their request to provide a full written statement about the abuse and harassment. After he wrote the statement detailing the abuse, John Doe 9 was placed in solitary confinement.  He was then transferred to Newberry Correctional Facility without any safeguards for his protection, despite his prior abuse and obvious vulnerability.

63.     As a result of his reporting the abuse, upon arrival at NCF, adult male prisoners exercised control over John Doe 9 and threatened him with physical violence.

64.     On threat of physical violence, John Doe 9 was also forced to engage in involuntary acts that endangered his freedom and conditions of confinement. MDOC staff at NCF were aware of the abuse but refused John Doe 9's request for protection.

65.    Eventually, John Doe 9 was transferred to KCF without any safeguards for his protection, despite his prior abuse and obvious vulnerability.

66.    At KCF John Doe 9 was again threatened with physical violence by older prisoners.

67.    John Doe 9 was also sexually harassed by a male MDOC staff member at KCF. The MDOC staff member frequently took John Doe 9 to remote areas of the prison for strip searches and repeatedly performed body searches on John Doe 9 where he would grope his body and grab his genitals in a sexual manner.

68.    The male staff member also sexually harassed John Doe 9 while he was showering and/or performing basic bodily functions.

69.    While at KCF, in or around the spring of 2013, John Doe 9 was anally raped by an adult prisoner in the shower.  MDOC staff witnessed the assault but failed to take any steps to protect John Doe 9 or provide medical or mental health treatment.

70.    John Doe 9 was eventually transferred to LMF, where he reported the sexual assault.

71.    Defendants' failure to provide safe and secure housing to John Doe 9 and failure to provide adequate medical and mental health care has resulted in his loss of rehabilitative and educational programming and severe emotional distress.

**JOHN DOE 10**

72.    John Doe 10 is currently a prisoner at an adult prison under the jurisdiction of the MDOC.

73.    John Doe 10 was incarcerated in an adult MDOC prison in late 2010, when he was 16 years old. Since being in the MDOC system, he has been housed at TCF, Michigan Reformatory (RMI), Saginaw Correctional Facility (SRF), URF, Earnest C. Brooks Correctional Facility (LRF), and Bellamy Creek Correctional Facility (IBC), where he was subject to the conditions set forth above.

74.    The TCF Warden Defendants and Policymaker Defendants failed to separate John Doe 10 from adult prisoners or take adequate precautions to protect John Doe 10 from assaults and abuse.

75.    While at TCF, John Doe 10 was housed with older adult prisoners.  On one occasion, four prisoners ran into his room and physically assaulted him. During his stay at TCF, staff threatened and harassed John Doe 10.  He was also held in isolation on multiple occasions.

76.    In late 2011, while he was still 17 years old, John Doe 10 was transferred to Michigan Reformatory (RMI).   RMI Warden Defendants and Policymaker Defendants failed to separate John Doe 10 from adult prisoners or take adequate precautions to protect him from assault and abuse.

77.    At RMI John Doe 10 was sexually harassed and pressured for sex by an adult male prisoner.  The harassment and abuse was open and obvious.

78.    While at RMI, John Doe 10 was also tasered.

79.    In March of 2012 John Doe 10 was transferred to Saginaw Correctional Facility (SRF) without any safeguards for his protection despite his prior abuse and obvious vulnerability.

80.    The SRF Warden Defendants and Policymaker Defendants failed to separate John Doe 10 from adult prisoners or take adequate precautions to protect him from assaults and abuse.

81.    At SRF John Doe 10 was sexually assaulted in the shower by an older adult prisoner.  Following this incident, other adult prisoners sexually abused and harassed John Doe 10.

82.    John Doe 10 was also physically assaulted at SRF on at least two occasions.  MDOC staff at SRF were aware of the assaults.

83.    John Doe 10 was eventually transferred to URF without any safeguards to protect him from further assaults and abuse.

84.    John Doe 10 requested protection at URF but was ignored and/or denied. While at URF John Doe 10 was physically assaulted by an older prisoner. As a result of the assault, John Doe 10 was issued a fighting ticket and placed in segregation.

85.     John Doe 10 was then transferred to LRF, where he was physically assaulted by another prisoner.  He obtained a knife to protect himself from another assault, and was issued new criminal charges for possession of a weapon and pled guilty in June of 2014.  As a result of this guilty plea, he will serve an additional one to seven years in prison.

86.     John Doe 10 was then moved to IBC, where he was housed in administrative segregation because of his fear of returning to the general population.

87.     Defendants' failure to provide safe and secure housing to John Doe 10 and failure to provide adequate medical and mental health care has resulted in his loss of rehabilitative and educational programming, and severe emotional distress.

## ADMINSTRATIVE EXHAUSTION

88.     Plaintiffs are not allowed to file grievances challenging policies, procedures, placement, housing or custody, and thus Defendants do not provide an available administrative process capable of use through which Plaintiffs can exhaust claims relative to these issues.

89.     With regard to their abuse, prior to bringing this action, John Does 8 and 10 exhausted the administrative grievance process to the extent the system was available to them.

90.    John Does 8 and 10 filed grievances under the standard MDOC grievance process and each received notice from the facility that the grievances were diverted to the new, two-step PREA grievance process.

91.    Diversion of John Does 8 and 10's grievances to the PREA process is consistent with the manner in which the MDOC has treated grievances related to sexual abuse thus rendering the traditional grievance system effectively unavailable to prisoners with these types of claims.

92.    John Does 8 and 10 exhausted the PREA grievance process to which they were directed as each submitted Step II PREA grievance appeals prior to filing this complaint. Neither John Doe 8 nor 10 received a response.

93.    John Doe 9 was unable to exhaust his grievances because the system was not available to him.

94.    The grievance process is unavailable to a prisoner when prison staff thwart the prisoner's use of the process through machination or intimidation.

95.    Acts of intimidation, threats, and retaliation by prison staff thwarted John Doe 9's access to the grievance process, and he was unable to engage the grievance process without a substantial risk of harm by prison staff who sought to deter his complaints.

96.    These actions, intended to obstruct John Doe's 9's pursuit of administrative and legal remedies through fear, intimidation and punishment, were

and are functional barriers that render the grievance process unavailable. They include:

a. John Doe 9's isolation at the Alger Correctional Facility in the Upper Peninsula, a prison in which there is a culture of prison staff retaliation against prisoners for filing grievances;

b. threats by a corrections officer to plant a weapon in John Doe 9's cell to set him up on a weapons charge, which, if carried out, has a substantial probability of resulting in a new criminal conviction, prolonged incarceration in solitary confinement, loss of privileges and/or a substantial extension of John Doe 9's time in prison;

c. deprivation of multiple food trays by prison staff who are aware of John Doe 9's involvement in the litigation and taunt him about his communications with attorneys; and

d. harassment following attorney contacts, including excessive cell searches intended not only to harass John Doe 9, but also to induce substantial stress, fear and anxiety that John Doe 9 will be set up with a false charge arising from planted contraband.

97.     As a result of these actions, the grievance system was unavailable to John Doe 9, and, through no fault of his own, he was unable to exhaust his administrative remedies.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Section 1983 – 8th Amendment**
### **(Against All Policymaker Defendants and Specific Warden Defendants**
### **Responsible for**
### **The Unlawful Conditions at Applicable Correctional Facilities)**

98.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

99.     Warden Defendants knew or should have known that vulnerable youth, including the Plaintiffs, were and are at substantial risk of sexual and physical abuse, privacy violations and degrading treatment in adult prisons, and failed to adequately protect them.

100.   Warden and Policymaker Defendants' placement of vulnerable youth, including Plaintiffs, in adult prisons without separation from adult prisoners or adequate supervision and protection violates the prohibition against cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.   Defendants' action deprived Plaintiffs and all similarly-situated prisoners of the equal protection of laws under the Fourteenth Amendment of the United States Constitution.

101.   The deprivation of constitutional rights alleged in this complaint are the direct result of official policy, custom and practices of Defendants and each of them.

102. Policymaker and Warden Defendants' failure to adequately train, supervise and/or institute and implement adequate policies and procedures for placement and protection of vulnerable youth constitutes deliberate indifference to Plaintiffs' safety and bodily integrity in violation of their rights under the Eighth Amendment.

103. Warden Defendants are individually liable for the unconstitutional conditions at their correctional facilities because they and/or their agents: 1) participated in creating and carrying out the unconstitutional policies that caused the harm to each John Doe; 2) failed to take necessary steps to ensure the safety of Plaintiffs; and 3) implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of offending MDOC staff.

104. Policymaker Defendants also had sufficient knowledge, including through the statutes and regulations established in PREA and through MDOC's internal policies and correctional knowledge, to know that youthful prisoners, including Plaintiffs, were and are at substantial risk of harm in adult prisons, and failed to adequately protect them.

105. Warden Defendants' unconstitutional policy and practice of placing Plaintiffs in solitary confinement and failing to provide alternative safe and secure housing free of sexual and physical violence constitutes cruel and unusual punishment.

106.   Warden and Policymaker Defendants' policy and practice of housing youthful prisoners in adult prisons with adult prisoners and failing to prevent and remedy the resulting sexual abuse, violence and degrading treatment experienced by Plaintiffs constitutes deliberate indifference to and the unnecessary and wanton infliction of pain and suffering, and degradation and psychological injury on the Plaintiffs, without penological justification.

## COUNT II

### Section 1983 – 4th and 14th Amendment Due Process and Privacy Violations
### (Against All Policy-Maker Defendants and Specific Warden Defendants Responsible for the Unlawful Conditions at the Applicable Correctional Facilities)

107.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

108.   Policymaker and Warden Defendants by their unconstitutional policies have violated and continue to violate Plaintiffs' rights under the Fourth and Fourteenth Amendments by failing to separate youthful prisoners from adult prisoners where there is significant risk of sexual and other violence.

109.   The Policymaker Defendants are individually liable for the unconstitutional conditions at the correctional facilities and are responsible for establishing the unconstitutional polices that caused the harm to each Plaintiff.

110.   The individual Warden Defendants are individually liable for the unconstitutional conditions at their respective correctional facilities and are responsible for establishing the unconstitutional polices that caused the harm to each John Doe housed in their facility.

111.   Policymaker Defendants had sufficient knowledge, including through the statutes and regulations established in PREA and through MDOC's own internal policies and correctional knowledge, to know that youthful prisoners, including Plaintiffs, were and are at substantial risk of harm, and failed to adequately protect them.

112.   Warden Defendants had actual knowledge that Plaintiffs were and are at high risk, and failed to adequately protect them.

113.   Policymaker and Warden Defendants' unconstitutional policy of housing youthful prisoners with adult prisoners facilitated and encouraged the sexual assaults, harassment, degrading treatment and privacy violations of the youthful prisoners by employees of MDOC and adult prisoners.  This official policy, custom, pattern or practice has deprived Plaintiffs of their constitutional right to bodily integrity and right to privacy without due process of law in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983.

114.   Warden Defendants' unconstitutional policy of placement of Plaintiffs in solitary confinement and failure to provide alternative safe and secure housing

without being subject to sexual and physical violence also constitutes a violation of due process.

115.   The deprivation of constitutional rights and the injuries and harm to Plaintiffs alleged in this Complaint are the direct result of official policy, custom and practices of Policymaker and Warden Defendants.

**COUNT III**
**Section 1983-14th Amendment Equal Protection –**
**(Against All Policymaker Defendants and Specific Warden Defendants Responsible for**
**the Unlawful Conditions at the Applicable Correctional Facilities)**

116.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

117.   Defendants' failure to separate youthful and adult prisoners and the resulting sexual abuse and violence experienced by Plaintiffs constitutes a violation of Plaintiffs' and members of Plaintiff Classes' right to equal protection under the Fourteenth Amendment of the United States Constitution.  Defendants' policies in this regard are not substantially related to an important and legitimate governmental interest.

118.   Defendants' failure to prevent and remedy the sexual abuse, harassment, degrading treatment, retaliation and ongoing violations of Plaintiffs' privacy violates Plaintiffs' rights to equal protection of the law under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. §1983.

119.   Defendants' placement of children in adult facilities, their failure to remedy the resultant sexual assaults and sexual harassment of youthful prisoners, and their ratification of the hostile conditions and treatment of youthful prisoners constitutes discrimination based on age.  This inferior treatment is not substantially related to an important and legitimate governmental interest and violates Plaintiffs' rights to equal protection under the law and 42 U.S.C. §1983.

120.   The placement of seventeen year old Plaintiffs in cells with adult prisoners and Defendants' failure to treat these youth consistent with their status as minor children deprived them of their right to equal protection under the law in violation of the Fourteenth Amendment of the United States Constitution.

121.   The denial to Plaintiffs, and to those similarly situated, of the right to equal opportunity for rehabilitation and the subjection of the Plaintiffs and those similarly situated to a hostile prison environment constitutes prohibited discrimination based on their age in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

122.   At all times relevant to this action, Defendants and each of them were acting under color of law and, in doing so, deprived Plaintiffs and all similarly-situated prisoners of the equal protection of the law under the Fifth and Fourteenth Amendments of the United States Constitution.

## DAMAGES

123.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

124.   The acts, omissions and policies of Defendants constituting violations of Plaintiffs' and Plaintiff class members' constitutional, statutory and common law rights were and are a proximate cause of Plaintiffs' damages.

125.   As a result of Defendants' acts, omissions and policies, the Plaintiff class representatives and the Plaintiff class members, individually and as a class, have suffered severe emotional and psychological injuries, physical injuries and damages, loss of freedom and loss of education, employment and rehabilitation opportunities and privileges and income.

126.   The physical and emotional injuries inflicted upon Plaintiffs and the class were willful, wanton, cruel and the result of intentional or deliberately indifferent conduct entitling Plaintiffs and the Class to punitive damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Assert jurisdiction over this action;

b.      Certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Plaintiff classes and

designate the harmed Plaintiffs as representatives of the classes and their counsel of record as Class Counsel;

c. Issue a Permanent Injunction prohibiting Defendants from subjecting Plaintiffs to policies and practices that violate their constitutional, statutory rights, and common law rights;

d. Order appropriate relief to remediate prison conditions such that youthful prisoners sentenced to terms of imprisonment in Michigan prisons are housed in a safe environment free of sexual assaults, sexual harassment and physical violence perpetrated by adult prisoners and/or staff;

e. Provide adequate medical and mental health treatment to remediate the ongoing harm to the Plaintiffs and the Plaintiff class;

f. Order appropriate relief to effectuate compliance with 22 U.S.C. § 7101, et seq.

g. Declare unconstitutional Defendants' housing of youthful prisoners with adult prisoners;

h. Declare unconstitutional the housing of youth in solitary confinement;

i. Award damages to Plaintiffs and Class Members for harm caused by Defendants' unconstitutional policies, unconstitutional acts and violations of law, including punitive damages were appropriate;

j.    Award the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and costs; and

k.    Grant such other and further declaratory and equitable relief as the Court deems appropriate, just and proper to protect Plaintiffs from further harm.

### <u>DEMAND FOR TRIAL BY JURY</u>

NOW COME Plaintiffs by and through their counsel and hereby demand a trial by jury as to all those issues triable as of right.

Respectfully submitted,

**<u>/S/MICHAEL L. PITT P24429</u>**
MICHAEL L. PITT(P24429)
PEGGY GOLDBERG PITT (P31407)
CARY S. McGEHEE (P42318)
Pitt McGehee Palmer & Rivers PC
117 W 4th St Ste 200
Royal Oak, MI  48067
Phone: (248) 398-9800
mpitt@pittlawpc.com
ppitt@pittlawpc.com
cmcgehee@pittlawpc.com

**<u>/S/DEBORAH LaBELLE</u>**
DEBORAH LaBELLE (P31595)
ANLYN ADDIS (P76568)
221 N Main St Ste 300
Ann Arbor, MI  48104
(734) 996-5620
deblabelle@aol.com
aaddis@sbcglobal.net

**/S/JENNIFER B. SALVATORE**
JENNIFER B. SALVATORE (P66640)
SARAH S. PRESCOTT (P70510)
NAKISHA CHANEY (P65066)
SALVATORE PRESCOTT &
PORTER, PLLC
Attorneys for Plaintiffs
105 E. Main St.
Northville, MI 48167
(248) 679-8711
salvatore@spplawyers.com
prescott@spplawyers.com
chaney@spplawyers.com

Dated:  April 14, 2017