**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHN DOE 8, JOHN DOE 9, and
JOHN DOE 10,

    Plaintiffs,

v.                                                                                                                           Case No. 17-11181

RICHARD SNYDER, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs are former juvenile prisoners who were imprisoned with adults in Michigan Department of Corrections ("MDOC") facilities. They originally appeared as Plaintiffs in a related case before this court, No. 13-14356. But following a motion for summary judgment in that case, Plaintiffs were dismissed without prejudice for failing to exhaust their administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (*See* No. 13-14356, Dkt. #204.) This case represents Plaintiffs' second try, as they have attempted to cure the deficiencies noted in the court's prior order. Defendants have again moved for summary judgment on the same ground: failure to exhaust administrative remedies. (Dkt. #19.) Plaintiffs filed a response (Dkt. #27) and Defendants a reply (Dkt. #30). The court has determined that a hearing is unnecessary. E.D. Mich. LR 7.1(f)(2). For the following reasons, Defendants' motion is granted.

# I. BACKGROUND

Before they turned 18, Plaintiffs were imprisoned with adults in MDOC facilities. They ate, washed, worked, spent free time, and bunked with adult prisoners, a practice MDOC no longer employs.

Plaintiffs allege that during the time they were housed with adult prisoners, they were subject to an increased—and unconstitutional—risk of sexual harassment and assault. As a result of the former housing policy, Plaintiffs allege they have suffered sexual violence and abuse, physical injuries, and trauma.

Plaintiffs originally came before this court as Plaintiffs in another class action setting forth nearly identical claims. Defendants there moved for summary judgment as to these Plaintiffs, arguing that they had not exhausted their administrative remedies and had no legal excuse for the failure. The court agreed. Plaintiffs were dismissed without prejudice for failure to exhaust. The court determined that MDOC's formal grievance process—Policy Directive ("PD") 03.02.130—was the "only method of exhaustion that MDOC has made available to Plaintiffs" (Dkt. #204 Pg. ID 5221) and Plaintiffs had not utilized it.

PD 03.02.130 requires that inmates participate in a multi-step grievance process to exhaust claims for the purposes of the PLRA. First, within two days of discovering a problem, inmates must attempt to informally resolve their issue with the staff member involved. If an informal resolution cannot be reached, the inmate must file a Step I grievance within five days of the attempt. If an inmate is dissatisfied with the response at Step I or does not receive a timely response, he must file a Step II grievance within ten days. The same goes for a Step II grievance—if a prisoner is unsatisfied or fails to

2

receive a timely response at Step II, he must file a Step III grievance within ten days. Inmate complaints "serve to exhaust a prisoner's remedies only when filed as a grievance through all three steps of the grievance process." (PD 03.02.130, Dkt. #19-2 Pg. ID 118.)

Plaintiffs indisputably did not utilize this procedure. (No. 13-14356, Dkt. #204 Pg. ID 5221–27.) Having no legally sufficient excuse for their failure to exhaust, Plaintiffs were dismissed in March 2017.

Running parallel to Plaintiffs' case was the implementation of new standards under "PREA," the Prison Rape Elimination Act, 34 U.S.C. §§30301–09. In 2012, the Department of Justice adopted various standards "for the detection, prevention, reduction, and punishment of prison rape" as required by PREA, 34 U.S.C. § 30307(a)(1). One such regulation, 28 C.F.R. § 115.51(b)(1), provides that prisons "shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse." States receiving federal funding for prisons were required to certify, within two years of the adoption of the rule, that the State was in compliance with the national standard or that it was using federal funds to achieve compliance. § 30307(e)(2)(A), (e)(7)(A). In 2014, the State of Michigan certified that it was using federal funds to achieve compliance. (Dkt. #19-3.)

In April 2016, MDOC issued Director's Office Memorandum ("DOM") 2016-29 establishing a two-step "PREA grievance process."[1] Under this process, an inmate "may file a PREA grievance at any time by submitting a completed PREA Prisoner Grievance

---

[1] Available at http://www.michigan.gov/documents/corrections/DOM_2016-29_PREA_Grievance_Process_523169_7.pdf.

Form." Inmates are not required to take any informal steps before filing a PREA grievance. After filing at Step I, the PREA coordinator or inspector must provide a written response within 60 days unless an extension is granted. An inmate may file a Step II appeal if he is unsatisfied or does not receive a timely response at Step I. "Any grievance containing issues other than sexual abuse shall be returned to the prisoner with instructions to process the prisoner's non-PREA issues in accordance with PD 03.02.130 'Prisoner/Parolee Grievances.'" The PREA grievance process serves to exhaust an inmate's administrative remedies when filed through both steps of the process. The process was implemented "effective immediately."

John Doe 8 and 10 have now made "new" attempts to exhaust their administrative remedies.[2] John Doe 8 filed a grievance form on May 20, 2016. (Dkt. #27-9 Pg. ID 374.) John Doe 10 filed a grievance form on May 25, 2016. (Dkt. #27-10 Pg. ID 377.) Each received a response to his grievance informing him that his complaint was being referred to a "PREA investigator." (Dkt. #27-11 Pg. ID 380; Dkt. #27-12 Pg. ID 382.) The response also noted that "[a]ny non-PREA issues reported on the same Step I form as the reported PREA issue must be resubmitted individually pursuant to PD 03.02.130 'Prisoner/Parolee Grievances.'" (*Id.*)

John Doe 8 received a response to the PREA grievance on June 13, 2016. The response stated that the grievance had been "forwarded . . . for investigation," but that

---

[2] In actuality, John Doe 8 and John Doe 10 filed the described grievances before they were dismissed from the initial case. The PLRA, however, "makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). "The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Id.* Thus it would have been futile for Plaintiffs to bring this evidence to the court in the initial case.

4

"[a]lthough the investigation is pending, this PREA Grievance is considered responded to and closed." (Dkt. #27-3 Pg. ID 338.) Again, the response also noted that John Doe 8 "must submit a new grievance in accordance with P.D. 03.02.130 'Prisoner/Parolee Grievances' for any issue not related to sexual abuse/harassment." (*Id.*) John Doe 8, concerned with this answer, requested Step II grievance forms but could not obtain one. He therefore wrote out his own Step II grievance and submitted it to the PREA coordinator on June 27, 2016. (Dkt. #27-18 Pg. ID 405.) He did not receive a response.

John Doe 10 did not receive an answer to his Step I PREA grievance. Similarly lacking the Step II appeal form, John Doe 10 wrote out a Step II appeal on a Step I grievance form on August 1, 2016. (Dkt. #27-23 Pg. ID 427.) The appeal was returned with a post-it note advising John Doe 10 to file the document by sending it to another facility. He did, but did not receive a response. In September 2016, having heard nothing, John Doe 10 sent all of his grievances and materials to the PREA administrator and director in Lansing. He did not receive a response. John Doe 10 ultimately filed a separate grievance in September over the fact that he had not heard anything about his initial grievance. (Dkt. #27-26 Pg. ID 433.)

Plaintiff John Doe 9 alleges that, though he intended to file a PREA grievance to exhaust his administrative remedies following his dismissal, his intentions were thwarted by prison officials who threatened retaliatory action. (Dkt. #27-28.)

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must

5

view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). It is the parties' responsibility to support their factual assertions by citation to the record; the court is under no obligation to search for materials in the record uncited by the parties. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Defendants allege that Plaintiffs have still not properly exhausted their administrative remedies. Pursuant to this court's earlier rulings, Plaintiffs were required to exhaust under PD 03.02.130, which they have not done. Defendants also argue that Plaintiffs' attempts to use the PREA grievance process is insufficient for at least three reasons: Plaintiffs' claims are, at their core, about housing rather than sexual abuse or harassment, and therefore not grievable under PREA; Plaintiffs did not complete the required PREA grievance process as set forth under MDOC guidelines; and PREA cannot retroactively revive Plaintiffs' claims because the PREA grievance process was implemented after Plaintiffs experienced sexual abuse.

Plaintiffs respond that they filed their grievances under MDOC's general grievance procedure but were diverted through the PREA process, so Defendants' argument that they should have used the general procedure is disingenuous. Plaintiffs

also argue that they were effectively shut out of the formal PREA appeal process because of Defendants' conduct in failing to provide appeal forms, failing to respond to submitted grievances, and giving misleading or confusing information. Finally, Plaintiffs say that Defendants forfeited a position on the retroactivity of the PREA grievance procedures by processing Plaintiffs' grievances on the merits.

### A. The Administrative Exhaustion Requirement

Under the PLRA, inmates may not bring federal actions challenging their prison conditions without first exhausting "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense that must be raised and proved by a defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The prison's requirements—not the PLRA—define the boundaries of proper exhaustion. *Id.* at 218. Thus "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Defendants argue that Plaintiffs have still failed to exhaust their administrative remedies as required under PD 03.02.130. They point to earlier rulings of this court in the initial case. There, the court determined that the only procedure that could properly exhaust Plaintiffs' claims was the formal grievance process of PD 03.02.130. (No. 13-14356, Dkt. #156 Pg. ID 3596; Dkt. #204 Pg. ID 5221.)

Plaintiffs argue that Defendants' diversion of their claims through the PREA process precludes Defendants from arguing that PD 03.02.130 was the only proper method of exhaustion. Plaintiffs' argument fails for two reasons.

First, this "diversion" did not preclude Plaintiffs from exhausting through the formal grievance procedure. Plaintiffs received multiple notices informing them that they

7

were required to re-file any non-PREA related grievances through the formal grievance process. (*See, e.g.*, Dkt. #27-3 Pg. ID 338 ("Only allegations of sexual abuse/harassment are being addressed in this PREA Grievance. You must submit a new grievance in accordance with P.D. 03.02.130 'Prisoner/Parolee Grievances' for any issue not related to sexual abuse/harassment.").) Moreover, as the court noted in the initial case, the Defendants' handling of a grievance outside the formal grievance procedures did not preclude Plaintiffs from pursuing their administrative remedies through Step III. As the court said before: "If a prisoner is dissatisfied because his grievance has been investigated and resolved by PREA investigators or 'handled administratively,' a prisoner would always have the option of filing a grievance at the next level. By doing so he would exhaust the prison's administrative process and gain access to the federal courts." (No. 13-14356, Dkt. #156 Pg. ID 3612–13.) Plaintiffs indisputably did not file Step II grievances under PD 03.02.130 after being informed that their grievances were being sent through PREA.

Despite these response notices and the court's prior discussion of the formal grievance procedure, Plaintiffs argue that their claims are properly treated as claims for sexual abuse/harassment that can be addressed under the PREA grievance procedures. According to Plaintiffs, to support Defendants' argument that their claims should have been addressed through the formal grievance procedure, "Defendants proffer a strained reframing of Plaintiffs' claims of custodial sexual abuse and harassment against Defendants and sexual abuse by other prisoners." (Dkt. #27 Pg. ID 311.) "There is no support for this argument," according to Plaintiffs, because their "complaint is that they were sexually assaulted and harassed while in Defendants'

8

custody because Defendants failed to protect them despite knowledge of their vulnerability to such abuse." (*Id.* at Pg. ID 312.) To the extent that Plaintiffs argue that the entirety of their claims were properly submitted and exhausted through PREA, that argument fails for reasons fully discussed below.

Second, even if Plaintiffs' grievances had been treated as Step I grievances under the formal procedure, they indisputably would have been untimely. The formal grievance procedure of PD 03.02.130 requires attempts at informal resolution within two days and the filing of a Step I grievance within five days of the alleged incident. Plaintiffs' grievances were submitted in May 2016 for events dating between 2011 and 2015. The court noted in the initial case while dismissing other plaintiffs for failure to exhaust: "[M]ost of the Does are likely now time barred from exhausting their claims." (Dkt. 188 Pg. ID 4101.)

Even assuming that Plaintiffs' grievances were properly treated as PREA grievances, however, that would not serve to administratively exhaust their claims here.

### B. Retroactivity of PREA Grievance Process

As noted above, the PREA grievance process was not adopted until April of 2016. John Doe 8 alleges sexual abuse, sexual harassment, assault, and rape occurring between 2012 and 2013. (Dkt. #1 Pg. ID 16–17; Dkt. #27-9 Pg. ID 374–75.) John Doe 9 alleges sexual abuse, sexual harassment, assault, and rape occurring between 2011 and 2013. (Dkt. #1 Pg. ID 18–20.) John Doe 10 alleges sexual abuse, sexual harassment, and assault occurring between 2011 and 2015. (Dkt. #1 Pg. ID 21–23; Dkt. #27-10 Pg. ID 377). Plaintiffs' claims could be properly exhausted through the PREA grievance process, therefore, only if the regulation mandating the new procedure

and eliminating the deadline to file sexual assault grievances—28 C.F.R. § 115.51(b)(1)—has retroactive effect.

Two apparently contradictory principles guide the court's application of intervening changes in the law: though generally "a court must apply the law in effect at the time it renders its decision," the court "should not construe congressional enactments and administrative rules to have retroactive effect unless their language requires this result." *BellSouth Telecomms., Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 657 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 263–64 (1994)). The result is that "courts should apply the law in effect at the time that they decide a case *unless* that law would have an impermissible retroactive effect as that concept is defined by the Supreme Court." *Id.* (emphasis original).

Because Congress may enact laws that apply retroactively, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280. If the plain text of the statute shows that it is to have a retroactive reach, the court's inquiry is complete. Where, however, there is "no such express command," the court must determine whether the law would have an impermissible retroactive effect. *Id.*

A law is impermissibly retroactive if "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. That is, the court looks to whether the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. Courts making the assessment take "sound guidance from familiar considerations of fair notice, reasonable reliance, and settled

expectations." *BellSouth*, 462 F.3d at 658 (internal quotations omitted). If the court determines that the statute would operate retroactively, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280. Procedural rules, on the other hand—rules that regulate secondary rather than primary conduct—may be applied in cases arising before their enactment even in the absence of such congressional intent. *Id.* at 275.

The court finds that § 115.51(b)(1) and the resulting PREA grievance process would have an impermissible retroactive effect if applied to this case. First, nothing in the text of the regulation or the PREA grievance process indicates that the regulation carries an "express command" of retroactive effect. Indeed, States were not required to certify compliance with the rule until two years after the rule was promulgated. *See* 34 U.S.C. § 30307(e)(2)(A), (e)(7)(A). The delay between promulgation and effective date is significant in demonstrating that the enactment did not reach conduct occurring before it became effective. *See Siding & Insulation Co. v. Alco Vending, Inc.*, 822 F.3d 886, 892 (6th Cir. 2016) (finding that a FCC regulation with an effective date 90 days after promulgation was intended to give parties time to come into compliance); *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 297 (6th Cir. 2015) (finding that a CFPB regulation with an effective date a year after promulgation was not intended to apply retroactively).

There is also no doubt that retroactive application of § 115.51(b)(1) to Defendants would "increase [their] liability for past conduct." *Landgraf*, 511 U.S. at 280. Permitting Plaintiffs to use the PREA Grievance process to exhaust claims that were previously foreclosed would expose Defendants to a variety of new liabilities for conduct

occurring before § 115.51(b)(1) was enacted. The court cannot properly impose such new liabilities on Defendants in the absence of a clear congressional expression that the rule should reach that far.

Moreover, the court's conclusion is in line with "familiar considerations of fair notice, reasonable reliance, and settled expectations." *BellSouth*, 462 F.3d at 658 (internal quotations omitted). The deadlines in the formal grievance process having passed, Defendants reasonably could have assumed that they were no longer subject to suit for claims like those presented here. Nor is § 115.51(b)(1) the type of procedural rule that does not raise concerns about retroactivity. The rule regulates primary conduct—it instructs that prisons "shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse," and it prohibits prisons from requiring inmates to engage in informal grievance procedures.

Other courts considering the retroactive application of § 115.51(b)(1) have reached the same conclusion. *See, e.g.*, *Kelsic v. Terrel*, No. 14-3342, 2017 WL 2560923, at *4 (E.D.N.Y. June 13, 2017) ("The Court can find no support for the proposition that the PREA regulations and implementing program statement should be applied retroactively where the alleged sexual assault occurred, and the time to grieve expired, before the PREA regulations went into effect."); *Payton v. Thompson*, No.13-92, 2015 WL 252277, at *4 (E.D. Ark. Jan. 20, 2015); *Wakeley v. Giroux*, No. 12-2610, 2014 WL 1515681, at *4 (M.D. Pa. Apr. 15, 2014).

Plaintiffs' claims arose before the implementation of the new PREA grievance process. Because § 115.51(b)(1) does not apply retroactively, Plaintiffs were not permitted to use this process to exhaust claims arising before its enactment.

Plaintiffs, for their part, do not argue that the regulation should apply retroactively, but argue that Defendants' forfeited the right to raise retroactivity by processing Plaintiffs' grievances on the merits. They cite *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), which held that a prison forfeits the right to challenge procedural defects in a grievance by processing the grievance on the merits. In *Reed-Bey*, an inmate submitted a grievance that—contrary to prison regulations—did not individually name those involved in the issue being grieved. *Id.* at 324. Because the prison processed the grievance on the merits, however, the Sixth Circuit determined that the prisoner had nonetheless properly exhausted. The court concluded: "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.* at 325.

Though Plaintiffs' continually characterize Defendants' reliance on the retroactivity argument as a "procedural bar," Defendants' argument is not a procedural one. Defendants' position is that Plaintiffs' new, timely PREA grievances do not revive claims previously dismissed for failure to exhaust PLRA requirements. This is not the sort of "procedural irregularity" at issue in *Reed-Bey*. Indeed, it is the substantive nature of the regulation that lends support to the conclusion that it should not be applied retroactively. To hold otherwise would impermissibly put MDOC between a rock and a hard place. The PREA grievance process does not impose a time limit on the submission of grievances alleging sexual assault. If MDOC officials rejected a PREA grievance as untimely because it included claims of sexual assault occurring before the process was implemented, the officials would be violating the provision prohibiting time

13

limits. But if processing a PREA grievance on the merits resulted in a revival of claims previously foreclosed, the officials may decide nevertheless to reject the claim.

### C. Whether Plaintiffs Have Administratively Exhausted

The parties spend much of their briefing debating whether John Doe 8 and John Doe 10 successfully appealed through the PREA grievance process in a manner sufficient to exhaust their claims. As noted above, however, whether John Doe 8 and John Doe 10 made it through the PREA process is irrelevant in light of the fact that the procedure may not properly be applied retroactively. Because these two Plaintiffs have not alleged that they exhausted in some other manner, summary judgment is appropriate as to them.

John Doe 9, on the other hand, asserts that he was thwarted from the PREA grievance process by "the threats and retaliation [he] experienced at the Alger Correctional Facility for reporting sexual abuse that is the subject of this litigation." (Dkt. #27 Pg. ID 327.) But even if John Doe 9 had successfully proceeded through the PREA grievance process, as he says he intended to do, that would not have served to exhaust his claims here. Thus summary judgment is also appropriate as to John Doe 9.

### IV. CONCLUSION

Plaintiffs have not administratively exhausted their claims as required by the PLRA. Thus, summary judgment is again appropriate. Accordingly,

IT IS ORDERED that Defendants' motion for summary judgment (Dkt. #19) is GRANTED. A separate judgment shall issue.

                                                    s/Robert H. Cleland               /
                                                    ROBERT H. CLELAND
                                                    UNITED STATES DISTRICT JUDGE

Dated: February 23, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 23, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner                    /  
Case Manager and Deputy Clerk  
(810) 292-6522

S:\Cleland\KNP\Civil\13-14356.DOES.summary.judgment.exhaustion.KNP.docx